Good morning, Judge Fakarek, Judge Moritz, and Judge Ebel. I'm Dori Richards. I represent Appellants Milner, Bartu, Gerhardt, and Dale in this action. This is another horse racing action, so I'm sure you're very familiar with the statute about at this point in time. In our case, the appellants suffered a harm when just moments before a horse race in 2014, their horses were scratched. In scratching the horses, there was a last-minute reinterpretation and application of something called the breed certificate rule. On this particular day, the third day of a set of three days of futurity races, which is, again, a very significant race, a million-dollar purses, Executive Director Mares and Keiter decided to enforce something that hadn't been enforced before and require original certificates to be at the actual race track. Now, the reason this hadn't been enforced before was because there's often multiple races going on in New Mexico, in Farmington, Riodoso, Sunland Park, they're all over the state. And so you can't, if you're having horses travel between different locations, you have different trainers, you can't always move them. So in the computerized age, the practice had always been, as long as you had the original certificate at a racing location in New Mexico, you were good to race. That all changed for unknown reasons on one day, the third day of a race. We argue that the due process rights of our appellants have been harmed because of that sudden last-minute change in the rule without any type of procedural protections, whether those are procedural process itself or substantive process. We also allege that the way that this was performed was a violation of legal protection because it was performed inequally. It was performed at one location and only asked to some horses and not to others on a third day of racing. Well, can you first address the issue we were addressing in the last case as well, which is you don't have that right to due process unless you first have an established property interest. I'm struggling to see where you have that here. Your Honor, that was an issue that we briefed and I anticipated you would ask that. We believe that the property right here is very clear. The property right is the fundamental right to engage in your chosen profession. Barry versus Berkey. Well, Barry didn't say that there was a property right and the fundamental right to engage in chosen profession. That case was specifically about a license. And then the Steinbaugh case, which I think is a district court case, maybe unpublished, where you're getting that language about the right to engage in the chosen profession of horse racing, also involved a license and that license was on the line. So both of those citations in your brief seem to rely on the property interest you might have in the license. How is that license impacted here? I don't see any impact on the license. Your Honor, a license itself doesn't give you the ability to be in your profession. It's your training, your practice, and your actions that you've done. The right to engage in the chosen profession, it doesn't just flow from Barry versus Berkey, which I think is a very significant case. But Steinbaugh relied on the McManus case and Hughes versus City of Albuquerque. And when we look at the definition of property rights, we have to look at how those substantive rights have been interpreted based on state law as well. That while the substantive right, the property right itself is a constitutional right, as it is fleshed out, it is contingent on how the state has looked at what that property right is. And I think that's consistent with the U.S. Supreme Court decision in Cleveland. You're not saying that because you have a license to race that you don't have to follow the rules. I mean, the license is a license to race pursuant to the rules, right? Your Honor, absolutely. We're not saying you don't have to follow the rules. You're not saying that there was any decision, published decision out there, that interprets the rules your way versus the other way as to whether or not you had to have that license on site at the place of the race or not. So you're not relying on any published interpretation of the rules, any regulation or any court decision that says that. You're relying on a course of practice. Is that correct? Your Honor, we're relying on the course of practice, the consistent interpretation that had been done for decades beforehand. When you say interpretation, but there's no reg or there's no opinion or nobody has so interpreted it. It's just they've allowed it. I'm wondering a little bit if you're asserting something like an estoppel argument that that the Racing Commission is stopped from changing its practices in the past. And if so, and if it is an agent of the state, we normally say that the state cannot be estopped by its course of action before. So how is your claim of a right different from an estoppel claim? Your Honor, it's actually, I think, more akin to an Administrative Procedure Act type of case. But we don't have any administrative. This case was, I mean, this interpretation was never ruled upon in an administrative proceeding, was it? Because this is the first time the state reinterpreted a rule and applied it at the last minute without any due process of this case. So why isn't it, why isn't your argument more like an estoppel? We want the state to be estopped because they've done it one way and now they can't change their mind. Your Honor, because it flows from due process. Again, the right to have some notice and procedure before. You don't have a right if estoppel can't be asserted against the state for changing its approach. Your Honor, the rule, there's nothing in the regulation that requires that the original breed certificate to be at the very same location as that particular horse is raised on a particular day. That's debatable. The rule is, I guess, I mean. Ambiguous? Well, it might be, it might not be. I mean, it does say that it has to be on, before the whatever that group is called, the person that handles the supervision of the records. And the original breed certificates were at a location within New Mexico Racing Commission control with easy access to all of the documents at any time. I really do think it is very similar and akin to Administrative Procedure Act type of question where an agency's interpretation of their rule deserves no deference when they unilaterally change their interpretation at the very last minute, which is what happened here. Here there was no notice. There was no ability. Okay. Let me ask you about that position, analogizing it to a claim under the APA. As I understand it, the issue here is under qualified immunity. And one of the issues involving qualified immunity is whether there is an intrusion into a clearly established right. And so under the APA, there might be discretion that is built in for the agency and that might be considered arbitrary and capricious. With regard to qualified immunity, at least the second prong, if in your interchange with Judge Abell, I take it that under the rules, there is some built-in ambiguity about whether the original certificate has to be on site. And if this is maybe a question, if there is not a Tenth Circuit or a Supreme Court precedent or even a consensus in other circuits saying that scratching a horse for a single race would violate the owner's due process rights, I'm not sure how we can say that there was an intrusion into a clearly established right, even if you're correct with regard to your analogy to an APA claim. So, Your Honor, the question is the right. And what we believe the concern is here is too much of a focus on the license itself. The license is a piece of paper. I'm going to give a quick analogy. For example, let's say you have a license to practice medicine. And the New Mexico Board of Physicians shows up at the hospital one morning and says, do you have your original license with you? And the doctor says, no. Well, you can't go into surgery, sir. That's exactly what happened here. Well, what about a situation where there may be a denial of a right to counsel during a trial for a brief moment, just like occurred in Connecticut v. Gabbard, and the Supreme Court said, well, a brief interruption in the ability to exercise a right under the Sixth Amendment does not deny you the rights enumerated under the Sixth Amendment. So the Supreme Court in Connecticut v. Gabbard specifically differentiated between a single episode, much like scratching a horse for a single race, versus the broader right to practice medicine. Well, Your Honor, I think the problem here is that, again, I believe the Sinderman case stated that you have to look at the property right particular to that right, particular to that location and the interpretation that has been given in state law. Missing one race is more than missing one race. When you're missing a futurity race, that can completely end the horse racing career or profession. Horses have a very short, as you'll see in the pleadings that we filed in the papers, they have a very short period of time, two to three years, huge amount of investment that goes into this right before they can race in that one race. Missing that one race can be akin to not having the ability to engage in the chosen profession. Okay, let's say you're right. Are there any cases that have supported that? Your Honor, I believe that Berry v. Barkey, in conjunction with McManus, as well as Hugh v. City of Albuquerque, as we argued in our papers, establishes that it's not just the piece of paper itself, it's the right to engage in the profession. And a deprivation of this type of race, last minute, without any meaningful to process at all, no pre-process, no post-process. The New Mexico Racing Commission had no ability to provide any post-process meaningful redress for this harm. Didn't a court of appeals in New Mexico, in an unpublished opinion, Steenbrough, say that this license is a privilege but does not give you a property right? I mean, it seems to me, just to follow up on what Judge Becker says, I couldn't find any clearly established law saying that what happened has already been determined to be unconstitutional. But in fact, I have a state unpublished opinion that says there is no such property right. Your Honor, actually, that's slightly different. There's no property right in the piece of paper, the license itself. The property right is the right to engage in the chosen profession, the constitutional right to do that. And when we interpret that nexus between substantive right, substantive due process, and 1983 actions, it is the right to engage in the profession  You think Steenbrough was just saying, we're just talking about a piece of paper, not a broader right to engage in something? Your Honor, that case was very narrow. In fact, my firm actually represented Mr. Steinbaum for a period of time. It was actually a very narrow case on something that occurred to him. It ended up with being just a very brief suspension. But he was arguing in state court a slightly different issue. It was just appealing the Racing Commission decision and not going into the due process issues and the constitutional issues that we bring today. If I may, I'd like to reserve the last two and a half minutes. Thank you. Your Honor, Seth McMillan, Montgomery & Andrews out of Santa Fe, New Mexico. With me here today in the courtroom is Mr. David Keiter, one of the two individuals who are the named defendants. In this matter, Mr. Keiter joined us from Rio Doso, New Mexico, where he drove up on his own dime. May it please the Court. In listening to all of that, I think it's clear that this matter can be affirmed on the clearly established right prong of qualified immunity. It's clear from Supreme Court precedent that the courts may start with the clearly established prong. Pearson lays that out. And then Kearns took it a step further and said that the inquiry can start and end there, particularly where qualified immunity has been asserted at the pleading stage, as here, and where the precise factual basis for the claim may be hard to identify. Here, the district court found that there was no clearly established right, and they did so correctly. And what the rest of the district court's analysis seems to have been, as the Pearson case referred to it, as an academic exercise in trying to figure out whether the precise factual basis is properly alleged under the constitutional claims. Essentially, for the clearly established prong, it has to be a right sufficiently clear in the case law, in the Tenth Circuit law, in the Supreme Court law, or in the overwhelming weight of other courts, that here, in this case, Mr. Morris and Mr. Kiger would understand what they were doing in interpreting and enforcing the breed certificate rule violated some clearly established right. It has to be an indisputable right, unquestioned. It's a very high burden. The Ashcroft v. Alkid case makes that very clear. What do appellants have? What is it that they're suggesting? Well, it's the Steinbaugh language. It's an unpublished New Mexico Court of Appeals case. It cites McManus, which is a New Mexico Supreme Court case. The language is twofold. First, that the license is not a vested right to which due process attaches. Secondly, that the horse owner nonetheless has a right to engage in the chosen profession. Appellants seem to believe that somehow that second clause creates a right, it's not clear to me, either more expansive or more particularized than just the license, the so-called piece of paper. Do you think that to be clearly established, there has to be prior precedence specifically addressing Rule 15.2.5.12b? Because you're just not going to find that, chances are. That's exactly right. So how much analogy will you allow, do you think, or will the Supreme Court allow, I guess, more importantly? Well, that's a great question. The Supreme Court, of course, doesn't want to see generalized propositions, right? We can't have a broad... So how far beyond this precise rule can we go with precedent? How about a case in which, in some regulated context, a plaintiff has been found in violation of a rule and precluded from participation in a discreet event, a horse race, an oral argument, something like that. And these folks bring a court action, and the court finds that there was a clearly established right in participation in that activity on that given day. Maybe something that broad. We all understand that there's not a heck of a lot... Well, today we're developing more, of course, race and law... The problem is, if we don't limit it to 15.2.5.12b, we get precedent that doesn't even address the point, because the point is what is meant by on file with the racing secretary or horse identifier. And so unless a precedent deals with what the meaning of the words on file with a racing secretary or horse identifier means, the precedent is really not useful. And so it seems to me that if we're taking the argument as literally as you're asserting, a case about some other sporting event, some other state, some other event requiring licenses, whether it's on file here or there, would simply not be interpretively helpful at all. Which means basically that you get a free pass, a free walk from any 1983 actions. I'm not entirely certain that's true. Here, what we really have is a generalized proposition that plaintiffs haven't even made an attempt to particularize to the facts of this case. The burden is really on the plaintiffs to identify this clearly established right. And we're not even seeing an attempt to particularize this beyond this broad and really inaccurate when you examine the case law from which this supposed clearly established right to participate in the profession arise. We're not seeing even an attempt to be more specific, to be more particularized. And as such, I'm not entirely certain how to proceed other than – Well, I guess I was a little confused by the whole clearly established analysis. And generally in these qualified immunity cases, we assume, if we're going to go to the clearly established prong first, we assume that there's been a violation. But then we look to see whether that right that was violated is clearly established. But I did not read the district court's opinion on the clearly established analysis to take that approach. Instead, it seemed to be mixing the concepts of whether there's been a violation here, and in particular, whether there's a protected property interest to begin with that was impacted by the actions at issue here. And it mixed that, and it didn't assume that there was a protected property interest. It didn't assume that there was a violation, and yet somehow it found the law was not clearly established. And so I'm a little bothered by that whole analysis. And I guess I would ask you, before we could even decide whether there was a clearly established right, whether that right was clearly established, wouldn't we have to decide, was there a right? Meaning, was there a property interest to begin with? And what's the answer to that question? Well, I think what Your Honor may be referring to is the mandatory approach for addressing the two prongs of qualified immunity prior to the Pearson case, which clearly allowed the court to – Well, I know you can turn them around, but when we turn it around, we assume that there's a violation. Well, as I read the Kearns case, that's not necessarily true. The Kearns case allows for the inquiry to begin and end with this prong, where the issue has been raised at the pleading stage, and where the facts, the allegations are muddy. I don't read in Kearns a requirement that there's any assumption that there has been a violation in addressing the clearly established right prong. The clearly established right prong involves an inquiry into the case law, into whether Mr. Kiter, Mr. Mares would have known, despite the fact that the regulation allows – the regulation allows the court to enforce the rules of horse racing, and where the breed certificate rule, in fact, is built into it is room for discretion. If you take a look at the plain language of the regulation, it's that the breed certificate must be on file with the racing secretary or horse identifier, horse identifier being the stewards, and then there's discretion built in that the stewards may waive the requirement if other information is otherwise available and the stewards are satisfied that the horse is correctly identified. Now with that regulatory scheme, it's really – I don't understand how Mr. Kiter or Mr. Mares could have believed that they were violating anyone's established right in really performing their job duties, which is what this comes down to, is that these stewards are empowered by regulation to interpret and apply the rules, and that's exactly what they did. As – does that answer the question or am I going off? I'm still a little confused. I'm just trying to get you to focus on the existence of a property interest. Okay, sure. I'm not even seeing in the pleadings where a property interest was pled. There is in the complaint a concession that there was no effect on any licensure here. The – that would be the property interest. The professional licensure, the Supreme Court has said, is there is a property interest in that. And that's fine, however, our – So the alternative would be perhaps there's a property interest because the state law or the regulations are somehow mandatory and not discretionary, and I think what you were just trying to tell me is they are discretionary, so you can't pull a property interest out of those either. That's exactly correct. Thank you. And so if you don't have a property interest, I guess my question is how do we even get to a violation of any right, and why are we even talking about whether it's clearly established or not if there's no property interest? Well, that's fair enough, and part of that question would probably be best directed at the appellant, but I guess what I'm saying is that under Supreme Court precedent, it doesn't seem to me even required that we get bogged down in that analysis where there's What analysis? Whether there's a property right. That's preliminary to everything else. I would think you'd want to get bogged down in that analysis because if you don't have a property interest, they've got no due process rights. Fair enough. Procedural or substantive? What if the Commission had said, look, we know you've got a property interest in your license, you can race, and we're not going to interfere with that except that we are now deciding that black horses with white stars on their forehead can't race in this race. We've just decided that within the last hour in this particular race, but they're welcome in every other race. Would that affect their property right when it doesn't affect their basic license? Well, certainly where there's no basis in the regulations for scratching horses with what was it, black with white stripes or white stars, perhaps. So isn't that what the allegation was here? It seems to me like we're kind of dealing with a nonsense abstraction if we say did this affect their license or not. Their license is the ability to race, and if the ability to race in the biggest race in the country on the quarter horses is denied, this license doesn't have much meaning. Well, for one thing, the action taken by Morris and Kiter here was to scratch a horse from the quarter horses. The question to my mind is, of course there was no effect on the license because the owners of the horse could have raced other horses who met the rules of horse racing. In fact, they apparently allowed other horses to either race without the license on file or gave them notice in this very race in advance and didn't give notice to these particular people. Well, those allegations, both of those allegations are belied by the attachments to the complaint. Well, we're not going to, can we, I mean this is a qualified, I mean, can we make that factual finding on appeal? Well, we have case law, give me just a moment. The case we were looking at is Olpin v. Ideal National Insurance Company, it's a Tenth Circuit case 419-42D-1250, and while it's the duty of the court to liberally construe and accept as true the allegations of fact in the complaint, the court's not bound to accept conclusions that are at variance with other facts, terms of documents attached to the complaint. And in fact, when determining whether the allegations were well pled, I would also cite the Robbins case, Robbins v. Oklahoma, where the Twombly requirements are, they have greater bite when a qualified immunity matter is being resolved at the earliest stage. Let me ask you about that, let's say we agree with you and so we look at the hearing officer's doubt that there were other horses, at least one other horse, that was allowed to race on May 22nd or 23rd, and that that horse was retroactively disqualified later. Now in that situation, if the horse had raced, then I can imagine that post-deprivation process could be meaningful. In other words, to take the case that preceded you, if the horse had finished in first place and it was ultimately determined through post-deprivation process that the rule was improperly interpreted here to require the original certificate, then first place could be retroactively, could be upheld, could be ultimately awarded to that horse. Now if to take a jet black patriot who didn't have an opportunity to race on the 24th, post-deprivation process would be absolutely meaningless. You could say, oh, well it's too hard, we shouldn't have disqualified jet black patriot from racing, or I'd probably get my horses fixed up for the first one, sorry. But the horse was being disqualified, but post-deprivation process would be meaningless and pre-deprivation process would be impossible. I don't know how pre-deprivation process would work. So it seems to me that even if we accept your point about the other horse being retroactively disqualified, there is a serious difference in the way that process could be applied to those two horses. Well, my concern here is that this isn't an action against the commission and the process that was provided by the commission. This is an action against two individuals whose conduct here was within their job description and was really to perform what Judge Browning refers to in the very excellent Gearhart opinion that I would commend to the court, is really a mechanical kind of application of rules. Ultimately, I'm not entirely certain what process, whether pre-scratch or post-scratch, these two individuals, as opposed to the commission, who is not a party to this matter, what these individuals owed these appellants under these circumstances. Again, this isn't a challenge. So, I don't mean to keep you so far past your allotted time, but are you saying that because these two officials didn't control the process that they couldn't be liable for a deprivation of due process because that's up to other people? No, I'm saying that appellants would have been better served bringing the case to the commission, bringing their claims against the commission, who is ultimately responsible for process. It's a failure of pleading. It's a failure of naming the appropriate parties, is what I'm saying. These gentlemen do not avoid liability on the basis that they're not, were they supposed to hold a hearing before the race? Were they supposed to hold some sort of independent hearing independent of the commission after the race? They are immune from liability under the clearly established prong, which the plaintiffs really haven't met even remotely under, again, the analysis laid out under the Gearhart opinion, which was really the first part of this. You need to wrap up. Sorry. I'm sorry? You need to wrap up. I'm done. Okay. Thank you.  Is that it? Do you have anything else? Thank you very much. Thank you. Thank you so much. We'll give the appellant an extra two minutes and 40 seconds. Thank you, Your Honor. First, I would actually encourage you to look at the Gearhart decision. The appellees now have alleged that we should have sued the commission when we did that the first time, and they had quasi-judicial immunity. The problem that we have is qualified immunity has become so expansive, quasi-judicial immunity and qualified immunity, that it's rolling back. It's giving a free walk to most state actors now, contrary to the 14th Amendment. I mean, that amendment was passed for a reason, to give people a right to proceed against state actors. And the arguments that appellee has made here, as well as the federal district court, both in the Gearhart decision and in the Milner case, is that there is no remedy at all and no due process claims that you can bring against these state actors. The due process violations here by the executive director, he's the person who was charged by the commission with creating the process. And when he decided... How far did you research relevant case law, precedent law? Did you research... Obviously, there would be nothing on this precise regulation, but did you research generally of administrative agencies interpreting their regulations? Your Honor, I was a federal attorney for 17 years, and I handled APA cases. And this was what... That's why I brought up that analogy, because to me, it seemed very much like that, that this was a very arbitrary, capricious action that was contrary to the existing rules that were being followed. If we look at Perry v. Sinderman, the extent of a protectable property interest is a flexible concept determined according to existing rules and understandings. People knew what the brief certificate rule was, they knew how it had been interpreted for decades. In fact, if you look in the administrative record, Lonnie Barber, who owns the track, testified that they had never interpreted the original requirement that they suddenly did on the third day of racing to require that original certificate to be at that very location. Lisa Johnson, an employee and another steward with the racing commission who was at the track that day, raised the very same concerns to Mr. Keiter. She testified to those concerns in front of a hearing that was held with a hearing officer. And the hearing officer found that due process violations had occurred and that when they changed this rule and applied it inequally on the date in question, on the third day of racing, some people were impacted by it and other people were let go. It was applied at one location and at others. Some locations got notice in advance, others didn't. That is the epitome of a violation of equal protection and a due process concern. There was absolutely nothing in place. Were there any horses that were allowed to race from the 22nd to the 24th that didn't have their original certificate on file at that racetrack that were not retroactively or disqualified or disqualified in advance? So, Your Honor, one thing we have to keep in mind here is this was a motion of dismiss at the initial stages without discovery. And if we look at the well-pledged facts in the complaints... Accepting the truthfulness of everything in the complaint and the hearing officer's report that was attached and incorporated into the complaint, is there anything in the complaint or its incorporated attachments that would have allowed an inference at all that there were any horses that were allowed to race without the original certificate during that three-day period that were not ultimately disqualified? Yes. Your Honor, what we allege was that there was horses that ran, that did not have the original certificate in place, and that that was a violation of equal protection. Now, the appellates have come forth and said, well, one of them was scratched afterwards. We don't know if all of them were, because that's a factual development that never happened because of discovery. But our complaint alleges that they were not all retroactively scratched. You allege that? Yes, Your Honor, in the complaint. And this is a very lengthy... That horses that did not have the original breed certificate at that location were alleged to race. One of my concerns in this case is how preliminary it is. This is the point you're making, but this is the motion to dismiss stage. We have to accept your allegations as true, and we really don't know a lot of the facts yet, important facts. And, Your Honor, that's why we've asked for the decision on qualified immunity to be overturned and remanded for discovery and a trial on the merits. We think that this was preliminarily dismissed that was in contravention of qualified immunity. And, in fact, when the Gerhardt decision with Judge Browning, and I don't have the published decision, but it is that 15CV00797. It was dated January 20, 2016. He very distinctly, when he did dismiss the Racing Commission, he did talk about qualified immunity as to Mara's and Kider, and said specifically they were more like police officers and wouldn't probably enjoy qualified immunity in this type of instance. We think Judge Browning's decision, which is why we brought the second complaint within the three-year sexual limitations, we brought the second complaint just against Mara's and Kider consistent with the guidance that Judge Browning provided. I review almost whenever I have a qualified immunity case, I review his stance on qualified immunity, and we really took his guidance from that. So in this instance, we're asking for the matter to be remanded, the development of discovery, and if it's right for summary judgment at that time, that's fine. But the decision in this case was flawed. It didn't go into the standards necessary for due process or equal protection. Thank you. I do want to ask you one question, if I might, and that is, in your complaint, it says on paragraph 38, substantial evidence exists that establishes that the implied requirement of having an original breed certificate on ... Well, no, that's not ... I was trying to find it. I was thinking that your complaint specifically said that there were other horses that, just as you indicated a moment ago, that were allowed to race, unlike your horse, but that you specifically, at the end of that allegation, had cited the hearing officer's report. I think it's page 69. Yeah. And the hearing officer's report was the one that said that other horse was ultimately retroactively disqualified. And so I understood your comment a moment ago to say, well, that may not have been the only horse that was allowed to race without the original certificate, but if you make that allegation and you incorporate the hearing officer's report, I don't see how you can reasonably interpret your allegation to say, well, there may be a whole lot of other horses because you're specifically incorporating that one horse that was discussed by the hearing officer. Your Honor, in the complaint, we say horses were allowed to race, and the hearing officer looked at one, and that's all the information because this wasn't developed because there was no discovery. And you used the word horses, plural? I believe we did, Your Honor. And I wrote this complaint, I'm sorry, three years ago, and I don't have that paragraph in front of me. And, of course, the other issue is, even if there was only one, you also alleged, I think, or at least in the briefs you argued, that other owners were given a heads-up that they needed to get the original on file. That is correct, and that did happen, Your Honor. So even if only one was eliminated, and that one was retroactively eliminated, you still got the problem. For some reason, they had advance notice. You still got a heads-up, discriminatory advantage. Yes, Your Honor. Thank you. Thank you very much. Thank you. Thank you. All right. Thank you to all counsel for your fine advocacy. The next case on our docket is Aguilar v.